1  James L. Wraith, State Bar No. 112234
   E-mail:     jwraith@selvinwraith.com
2  Sara M. Parker, State Bar No. 238448
   E-mail:     sparker@selvinwraith.com
3  SELVIN WRAITH HALMAN LLP
   505 14th Street, Suite 1200
4  Oakland, CA 94612
   Telephone:  (510) 874-1811
5  Facsimile:  (510) 465-8976
6
7  Attorneys for Plaintiff
   BEAZLEY UNDERWRITING, LTD.
8

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| BEAZLEY UNDERWRITING, LTD., | CASE NO. 8:21-cv-642 |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| v. | |
| FITNESS INTERNATIONAL, LLC, | |
| Defendants. | |

COMES NOW, Plaintiff BEAZLEY UNDERWRITING, LTD. ("Beazley"), and files this Complaint for Declaratory Judgment against FITNESS INTERNATIONAL, LLC ("Fitness International"), showing the Court as follows:

## I.   NATURE OF THE ACTION

1.   This insurance coverage declaratory action arises out of Fitness International's claim for business interruption coverage related to the COVID-19 pandemic.

2.   Beazley subscribed to Policy No. W2C215200101, which provides Fitness International certain commercial property coverage, subject to the policy's

terms, conditions, limitations, and exclusions, from August 4, 2020, to August 4, 2021 (the "Policy").  A copy of the Policy is attached as Exhibit A.

3. Beazley seeks a judicial determination pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 concerning whether Fitness International is entitled to business income coverage and/or coverage for property damage for its claimed COVID-19 losses and/or the extent to which payment may be owed.

## II.  THE PARTIES

4. Plaintiff Beazley is a United Kingdom corporation and is a citizen and resident of the United Kingdom. Beazley was incorporated and formed under the laws of England and Wales, with its principal place of business at 22 Bishops Gate, London, United Kingdom EC2N 4BQ.

5. Defendant Fitness International is a California company with its principal place of business in Irvine, California.  It can be served through its registered agent: National Registered Agents, Inc., 818 West Seventh Street, Suite 930, Los Angeles, California 90017.

6. Upon information and belief, the members of Fitness International are citizens of the States of California, Delaware, Idaho, Massachusetts, New Jersey, Virginia, Illinois, and South Dakota, and at a minimum, none of the members of Fitness International are citizens of the United Kingdom and Beazley is not a citizen of these states. For the purposes of citizenship, Fitness International is a citizen of California.

## III.  JURISDICTION AND VENUE

7. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201 because complete diversity exists between the parties, the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs, and Beazley seeks declaratory relief pursuant to 28 U.S.C. § 2201, *et seq.*, the Federal Declaratory Judgment statute.

///

8. Beazley subscribes to Policy No. W2C215200101 and has more than $75,000 at issue in this litigation, and the subscriber to a Lloyd's insurance policy is a proper party.

9. An actual case and controversy of a justiciable exists among the parties regarding the duties, rights, and obligations, if any, under the subject insurance policy.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because over 125 of the properties at issue are located in California, with over half of those properties in this district, and Fitness International resides in this district.

## IV. INTRODUCTION AND BACKGROUND

11. Fitness International is the Named Insured under a commercial property policy subscribed to by Beazley, Policy No. W2C215200101 (the "Policy"). The Policy is an individual policy which forms part of a large commercial property insurance program for the 2020-2021 policy year, providing property damage and business income coverage to over 700 fitness centers owned and operated by Fitness International (the "Properties").

12. The overall policy limit for the 2020-2021 policy is $500,000,000 with various applicable sub-limits. Beazley subscribes to 10% of the $100,000,000 primary loss layer. Pursuant to the Policy, Beazley's obligations are several and not joint.

13. This declaratory judgment action arises from Fitness International's insurance claim for business income losses resulting from COVID-19.

14. The Policy was negotiated through and delivered to Fitness International's broker located in Los Angeles, California.

15. On September 14, 2020, Fitness International filed a lawsuit against insurers who subscribed to Fitness International's 2019-2020 policy in the Superior Court of California, Orange County, in the action styled *Fitness International, LLC v. Zurich American Insurance Company, et. al.*, Case No. 30-2020-01160031-CU-IC-CJC (the "California State Lawsuit"). Beazley was not named as a defendant in this suit as it did not subscribe to Fitness International's policy for the 2019-2020 policy

1  year. At that time, Fitness International had not even notified Beazley of a potential claim.

16. The California State Lawsuit was removed to this Court on October 23, 2020, in the action styled *Fitness International, LLC v. Zurich American Insurance Company, et. al.*, Case No. 8:20-cv-02040-JVS-JDE.

17. On January 6, 2021, Fitness International voluntarily dismissed the California State Lawsuit.

18. That same day, Fitness International filed a complaint in the Superior Court of the State of Washington, King County, styled *Fitness International, LLC v. Zurich American Insurance Company, et. al.*, Case. No. 21-2-00261-3-SEA against the insurers who subscribed to Fitness International's 2019-2020 policy (the "Washington State Lawsuit"). Again, Beazley was not named as a defendant in the Washington State Lawsuit.

19. On or about January 11, 2021, Fitness International first made a claim with Beazley regarding business income losses due to COVID-19 under the Policy.

20. Beazley timely acknowledged Fitness International's claim on February 2, 2021.

21. Beazley requested that Fitness International provide additional information concerning the facts and circumstances surrounding the claim in order to properly investigate the claim. These requests have not been responded to.

22. On or about March 18, 2021, Fitness International sent an Insurance Fair Conduct notice (the "IFCA Notice") to Beazley and other insurers pursuant to Washington State statute. The IFCA Notice is directed at insurers under both the 2019-2020 and 2020-2021 policies.

23. The IFCA Notice states that Fitness International intends to file an action against Beazley for bad faith arising out of Beazley's denial of coverage, despite the lack of denial and Beazley's ongoing efforts to obtain information related to the claim.
///

24. Beazley has filed this declaratory judgment action for a determination concerning whether Fitness International is entitled to business income coverage and/or coverage for property damage for its claimed COVID-19 losses and/or the extent to which payment may be owed.

## V. SUMMARY OF COVERAGE ISSUES

25. Beazley seeks a declaration as to the following coverage issues:

    a. Whether the claimed business income losses for COVID-19 constitute covered losses under the Policy;

    b. Whether the Policy requires direct physical loss of or damage to property for business income losses, and whether Fitness International has sustained direct physical loss of or damage to property from COVID-19 at any of its Properties;

    c. Whether the Policy excludes coverage for the claimed business income losses, including claims for losses arising from (a) communicable disease, (b) contamination, (c) an ordinance or law regulating the use of property, (d) loss of use, (e) loss of market, (f) a microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health, and/or (g) the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons;

    d. Whether the loss was fortuitous;

    e. Whether the claim is otherwise covered and not excluded or limited from coverage under the Policy; and

    f. Whether any payment is owed by Beazley to Fitness International under the Policy, and if a payment is owed, how much.

## VI. THE INSURANCE POLICY

26. The terms, conditions, definitions, exclusions, and other provisions of the Policy are incorporated herein by reference.

27. All conditions precedent to Beazley filing this lawsuit have occurred, but Fitness International has not complied with its obligations precedent to suit.

28. The Policy contains a choice-of-law provision which states that it "shall be governed by the laws of California. . ." Form (LMA3102A).

29. The Policy's insuring agreement provides as follows:

1.01 INSURING AGREEMENT

This Policy Insures against direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property, at an insured Location described in Section II-2.01, all subject to the terms, conditions and exclusions stated in this Policy.

\* \* \*

30. Covered Cause of Loss is defined as "[a]ll risks of direct physical loss of or damage from any cause unless excluded."

31. The Policy provides certain "Time Element" coverage as follows:

**SECTION IV-TIME ELEMENT**

4.01 Loss Insured

4.01.01 The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at an Insured Location. The **Suspension** must be due to direct physical loss of or damage to Property (of the type insurable under this Policy other than **Finished Stock**) caused by a **Covered Cause of Loss** at the **Location**, or as provided in Off Premises Storage for Property Under Construction Coverages.

The Company will also pay for the actual Time Element loss sustained by the Insured, during the Period of Liability at other Insured Locations. The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at the other Insured Locations. Such other Location

must depend on the continuation of business activities at the **Location** that sustained direct physical loss or damage caused by a **Covered Cause of Loss**.

32. The Policy's "Extra Expense" provision provides as follows:

    4.02.03   EXTRA EXPENSE

    The Company will pay for the reasonable and necessary Extra Expenses incurred by the Insured, during the Period of Liability**,** to resume and continue as nearly as practicable the Insured's normal business activities that otherwise would be necessarily suspended, due to direct physical loss of or damage caused by a **Covered Cause of Loss** to Property of the type insurable under this policy at a **Location**.

    The Company will reduce the amount payable as Extra Expense by the fair market value remaining at the end of the Period of Liability for property obtained in connection with the above.
    Extra Expenses mean that amount spent to continue the Insured's business activities over and above the expenses the Insured would have normally incurred had there been no direct physical loss of or damage caused by a **Covered Cause of Loss** to Property of the type insurable under this policy at a **Location**. Extra Expense does not include any Gross Earnings loss or Gross Profit loss, the cost of permanent repair or replacement of property that has suffered direct physical loss or damage, or expenses otherwise payable elsewhere in the Policy.

33. The Period of Liability is defined as follows:

    4.03. PERIOD OF LIABILITY

    4.03.01.   The Period of Liability applying to all Time Element Coverages, except Gross Profit and

                Leasehold Interest, and as shown below or if otherwise provided under any Special Coverage, and subject to any Time Limit provided in 2.03.09., is as follows:

        4.03.01.01.  For building and equipment: The period starting from the time of physical loss or damage of the type insured against and ending when with due diligence and dispatch the building and equipment could be repaired or replaced, and made ready for operations under the same or equivalent physical and operating conditions that existed prior to the damage. The expiration of this Policy will not limit the Period of Liability.

34.    The Policy provides certain "Civil or Military Authority" coverage as follows:

        5.02.03. CIVIL OR MILITARY AUTHORITY

                The Company will pay for the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by order of civil or military authority that prohibits access to the **Location**. That order must result from a civil authority's response to direct physical loss of or damage caused by a **Covered Cause of Loss** to property not owned, occupied, leased or rented by the Insured or insured under this Policy and located within the distance of the Insured's Location as stated in the Declarations. The Company will pay for the actual Time Element loss sustained, subject to the deductible provisions that would have applied had the physical loss or damage occurred at the Insured Location, during the time the order remains in effect, but not to exceed the number of consecutive days following such order as stated in the Declarations up to the limit applying to this Coverage.

35.    The Policy provides certain "Contingent Time Element" coverage as follows:

      5.02.05. CONTINGENT TIME ELEMENT

> This Policy covers the actual Time Element loss as provided by the Policy, sustained by the Insured during the Period of Liability directly resulting from the necessary Suspension of the Insured's business activities at an Insured Location if the **Suspension** results from direct physical loss of or damage caused by a Covered Cause of Loss to Property (of the type insurable under this Policy) at **Direct Dependent Time Element** Locations, **Indirect Dependent Time Element** Locations, and **Attraction Properties** located worldwide, except for in the following . . .

      \* \* \*

36. The Policy provides certain "Ingress/Egress" coverage as follows:

      5.02.15. INGRESS/EGRESS

> The Company will pay for the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if ingress or egress to that Insured Location by the Insured's suppliers, customers or employees is prevented by physical obstruction due to direct physical loss of or damage caused by a **Covered Cause of Loss** to property not owned, occupied, leased or rented by the Insured or insured under this Policy and located within the distance of the Insured Location as stated in the Declarations. The Company will pay for the actual Time Element loss sustained, subject to the deductible provisions that would have applied had the physical loss or damage occurred at the Insured Location, during the time ingress or egress remains prevented by physical obstruction but not to exceed the number of consecutive days as stated in the Declarations following such obstruction up to the limit applying to this Coverage.

37. The Policy's manuscript form contains the following exclusions:

///

      3.03    Exclusions

           The following exclusions apply unless specifically stated elsewhere in this Policy.

           \* \* \*

      3.03.01.01.    **Contamination**, and any cost due to **Contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy.

           \* \* \*

      3.03.01.03.    Loss or damage arising from the enforcement of any law, ordinance, regulation or rule regulating or restricting the construction, installation, repair, replacement, improvement, modification, demolition, occupancy, operation or other use, or removal including debris removal of any property.

      3.03.2.    This Policy excludes:

      3.03.02.01.    Loss or damage arising from delay, loss of market, or loss of use.

           \* \* \*

38.    Contamination is defined as:

      7.09.    **Contamination(Contaminated)** - Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, Fungus, mold or mildew.

39.    The Communicable Disease endorsement (LMA5393) provides as follows:

///

///

*  *  *

**COMMUNICABLE DISEASE ENDORSEMENT**

(For use on property policies)

1. Except with respect to Extension of Coverage 5.02.28 Tenants Prohibited Access, and subject to all applicable terms, conditions and exclusions, this Policy covers losses attributable to direct physical loss or physical damage occurring during the period of insurance. Consequently and notwithstanding any other provision of this policy to the contrary, this policy does not insure any loss, damage, claim, cost, expense or other sum, directly or indirectly arising out of, attributable to, or occurring concurrently or in any sequence with a Communicable Disease or the fear or threat (whether actual or perceived) of a Communicable Disease.

2. For the purposes of this endorsement, loss, damage, claim, cost, expense or other sum, includes, but is not limited to, any cost to clean-up, detoxify, remove, monitor or test:

   2.1. for a Communicable Disease, or

   2.2. any property insured hereunder that is affected by such Communicable Disease.

3. As used herein, a Communicable Disease means any disease which can be transmitted by means of any substance or agent from any organism to another organism where:

   3.1. the substance or agent includes, but is not limited to, a virus, bacterium, parasite or other organism or any variation thereof, whether deemed living or not, and

   3.2. the method of transmission, whether direct or indirect, includes but is not limited to, airborne transmission, bodily fluid transmission, transmission from or to any surface or object, solid, liquid or gas or between organisms, and

   3.3. the disease, substance or agent can cause or threaten damage to human health or human welfare or can

cause or threaten damage to, deterioration of, loss of value of, marketability of or loss of use of property insured hereunder.

4. This endorsement applies to all coverage extensions, additional coverages, exceptions to any exclusion and other coverage grant(s).

40. The Microorganism Exclusion (Absolute) endorsement (LMA5018) provides as follows:

\* \* \*

**Notwithstanding any provision to the contrary within this Policy or any endorsement thereto, it is understood and agreed the following applies to this Policy:**

MICROORGANISM EXCLUSION (ABSOLUTE)

This Policy does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to:

mold, mildew, fungus, spares or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This Exclusion applies regardless whether there is (i) any physical loss or damage to insured property; (ii) any insured peril or cause, whether or not contributing concurrently or in any sequence; (iii) any loss of use, occupancy, or functionality; or (iv) any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

This Exclusion replaces and supersedes any provision in the Policy that provides insurance, in whole or in part, for these matters.

\* \* \*

41. The Seepage and/or Pollution and/or Contamination Exclusion in the Policy's Additional Limitations and Conditions endorsement (NMA2415) provides as follows:

\* \* \*

**SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION**

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure:

1. any loss, damage, cost or expense; or
2. any increase in insured loss, damage, cost or expense; or
3. any loss, damage, cost, expense, fine, penalty or other sum which is incurred, sustained or imposed by, or by the threat of, any judgment, order, direction, instruction or request of, or any agreement with, any court, government agency, any public, civil or military authority or any other person (and whether or not as a result of public or private litigation);

which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

The term "any kind of seepage or any kind of pollution and/or contamination" as used in this Endorsement includes (but is not limited to):

1. seepage of, or pollution and/or contamination by, anything, including but not limited to … any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Provincial, Municipal or other law, ordinance or regulation; and

      2. the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

\* \* \*

42. Beazley contends that one or more of the terms, conditions, and exclusions cited above applies to define, exclude, or limit coverage and thus applies to limit or preclude damages payable under the Policy in this matter.

43. Specifically, Beazley contends that Fitness International did not sustain direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss as required by the Policy. The limited Civil or Military Authority coverage must also arise from direct physical loss or damage to property.

44. Regardless, the Policy excludes any losses arising from communicable disease, contamination, loss of market, loss of use, microorganisms, or the threat of anything which endangers or threatens to endanger the health, safety, or welfare of persons, and Fitness International's losses can be linked to one or more of these exclusions from coverage.

## VII. CLAIM FOR DECLARATORY RELIEF

45. Beazley hereby incorporates by reference the preceding paragraphs.

46. Pursuant to 28 U.S.C. § 2201, Beazley seeks a declaration including, but not limited to, the following:

    a. Whether the claimed business income losses for COVID-19 constitute covered losses under the Policy;

    b. Whether the Policy requires direct physical loss of or damage to property for business income losses, including coverage under the Civil and Military Authority coverage;

    c. Whether Fitness has sustained direct physical loss of or damage to property from COVID-19 at any of its Properties;

d. Whether the Policy excludes coverage for the claimed business income losses;

e. Whether Fitness International has claimed an excluded loss arising from communicable disease;

f. Whether Fitness International has claimed an excluded loss arising from contamination;

g. Whether Fitness International has claimed an excluded loss arising from an ordinance or law regulating the use of its properties;

h. Whether Fitness International has claimed an excluded loss for loss of use and/or loss of market;

i. Whether Fitness International has claimed an excluded loss for arising out of or relating to a microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health;

j. Whether Fitness International has claimed an excluded loss arising from the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons;

k. Whether the loss was fortuitous;

l. Whether the claim is otherwise covered and not excluded or limited from coverage under the Policy;

m. Whether any payment is owed by Beazley to Fitness International under the Policy, and if a payment is owed, how much, pursuant to the Policy's limits and applicable sublimits, and Beazley's several share; and

n. Beazley reserves the right to assert additional Policy provisions as the case develops, as there may be other provisions that apply of which Beazley has no present knowledge. Therefore, Beazley requests that the Court make such other and further declarations as may be appropriate.

///

15

COMPLAINT FOR DECLARATORY JUDGMENT          CASE NO. 8:21-cv-642

# VIII. PRAYER

Accordingly, Beazley prays that Fitness International be summoned to appear and answer herein, and that upon trial hereof, the Court declare whether Beazley must pay Fitness International for all covered damages owed for this loss; whether Beazley has any further duties in this matter; and that Beazley be awarded such other and further relief, at law or in equity, to which it may be justly entitled.

Dated: April 6, 2021         SELVIN WRAITH HALMAN LLP

By: /s/ *James L. Wraith*
James L. Wraith
Sara M. Parker
Attorneys for Plaintiff
BEAZLEY UNDERWRITING, LTD.

366361.doc